IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE PROGRESS PROJECT, LLC,<br><br>Plaintiff,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | ) | Case No.: 4:23-cv-00710-SRW |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION TO EXCLUDE CERTAIN OPINIONS OF TODD MORRIS**

State Farm seeks to exclude the following opinions of Todd Morris, contending his testimony is not based on sufficient facts or data. Specifically, these opinions relate to the weight of water, deflection from the storm event, water entry through certain storm events, and coating damage.

Plaintiff Project Progress, LLC agrees that Mr. Morris will not testify as to opinions concerning water entering the building through certain roof vents. Mr. Morris should, however, be permitted to testify to the remaining issues. State Farm's criticisms go to the weight and not the admissibility of his testimony. State Farm's counsel may cross-examine Mr. Morris on these issues.

**The Weight Opinion**

As set forth in Mr. Morris's report (Ex. 1 to State Farm's Motion), Mr. Morris described the roof assembly, designed to slope water to drains. He identified the gravel stop 7 inches above the finished roof surface. He explained none of the 3 inch clogs were clogged. Using Zurn's Roof Drain Vertical Requirements for Horizontal Roof areas, he determined the roof had

sufficient drainage to handle a minimum of 2 inches of rainfall. Ex. 1, PP00080. Due to the unprecedented rainfall on July 26, 2022, he found the drains could not evacuate the water fast enough. This conclusion does not differ from those identified by State Farm in its own denial letter. (See Docket 5-1).

He determined that the rain would have gone to the level of 7 inches before flowing over the edge based on his measurement. Due to additional space due to sloping at the center drains, his report stated there could have been upwards of 9 inches of water. *Id.* Then, he explains that the average water weight covering the surface of this roof during a typical rainstorm is calculated at approximately 20,000 pounds or 2 pounds per square foot. With additional inches, he identified the significant change in weight. And, he provided a weight of water table showing the increased weight of water depending on differing depths by square foot. Ex. 1, PP000081 and PP000082.

State Farm's criticism is that Mr. Morris testified in his deposition that he could not testify as to the ponding depth on each of the roof levels because he wasn't present during the storm. No one was on the roof during the storm and there is no video footage or other evidence to show the depth during the storm. There is evidence of a substantial rain event and it is clear that the amount of rain overwhelmed the drainage system. Mr. Morris merely intends to explain to the jury that the water level could have reached as much as 7 inches (9 inches where the sloping near drains is located) before coming over the side and how additional water beyond a typical rainstorm adds significant weight to the roof based on the table. These issues are beyond understanding of a typical juror and require explanation.

**Deflection**

Mr. Morris explains how roof assemblies are designed. Ex. 1, PP000081. He opines that with significant weight due to water, permanent deck deflection occurs. He explains that this damage contributes to ongoing and large-scale ponding. *Id.*

State Farm seeks to prevent Mr. Morris from explaining the roof assembly to the jury and describing how deflection occurs and the harms resulting from deflection. State Farm contends that Mr. Morris cannot opine on deflection because he does not know if there was in any deflection prior to the storm event. But, Mr. Morris knows from Mr. Cowin that Progress Project had never identified issues previously and that it hadn't experienced roof leaks in the past. He visited the roof once before the storm (approximately a year) to inspect for hail damage and observed no problems. Just like State Farm's expert, Mr. Morris took no measurements before the storm. Neither determined a numerical value for the deflection at any point. But, that does not preclude him from rendering his opinion that the storm caused deflection as the ponding, leaks, delamination, leaks, and other issues were apparent after the storm without identification or observation of any such issues by Progress Project prior to the storm.

Mr. Morris did testify that he is not an engineer. That does not render him unqualified to provide his opinions as he has over two decades of experience with commercial roofs.

**Coating**

Finally, he identified the peeling and delaminating coating in his report, stating that it was damaged and deteriorating due to the ponding and roof deflection that occurred. Ex. PP000081. He explains that roof coatings are not designed to withstand ponding water. He further explains how this damage is not covered by warranties and how the resulting ponding voided the warranty.

As explained in response to State Farm's summary judgment motion, State Farm distorts Mr. Morris's deposition testimony. He was asked to explain the purpose of the vents in the roof, explaining they are to allow for the release of steam or water vapor if moisture gets under the bitumen. Then, counsel asked if he knew if water ever got in the roof system at the property at issue before the storm and he properly answered no. How could he possibly know if water ever got in the roof system over many years? He explained in his deposition how he believed this storm impacted the roof, including the coating. There were not roof issues at this property pre-storm. There are issues after the storm. Mr. Morris was on the property both before and after the storm. He observed the substantial damage and problems after the storm and explains how the substantial amount of water from this unique rain event impacts the various components of a roof of this nature.

Mr. Morris testimony is required to explain the roof system to the jury, to explain its design to shed water, to explain the how this 1 in 1000 year rainfall impacted the roof, and how the observed damage and resulting problems experienced by Progress Project are consistent with damage that occurs to such a roof when a substantial amount of water pools or ponds on the roof – namely, delamination of the coating, compression of materials, water within the roof system, and deflection.

State Farm is free to cross-examine Mr. Morris. But, the issues raised go to the weight of his testimony. The Court should not preclude Mr. Morris from testifying on any of these topics, excepting water entering through the roof vents (an opinion that will not be presented to the jury).

Respectfully submitted,

THOMPSON COBURN LLP

By */s/ Matthew S. Darrough*
Matthew S. Darrough - 46307MO
One US Bank Plaza
St. Louis, MO 63101
P: 314 552 6000/ F: 314 552 7000
mdarrough@thompsoncoburn.com

Attorney for Plaintiff

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was sent via electronic mail to all attorneys of record this the 31st day of January 2025.

*/s/ Matthew S. Darrough*