IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE PROGRESS PROJECT, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 4:23-cv-00710-SRW |
| | ) | |
| v. | ) | |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant State Farm Fire and Casualty Company ("State Farm") seeks this Court's imprimatur to deprive Plaintiff The Progress Project, LLC ("Progress Project") of a trial when there are disputes concerning material facts.

In essence, State Farm's position is that a jury cannot believe that the July 26, 2022 storm caused the substantial damage observed by Brent Cowin, Todd Morris, and State Farm's own David Carvajal following the storm because Progress Project cannot testify what the roof looked like the day before the storm event. There is evidence that the storm event caused the damage to the roof. As detailed further below and in the response to State Farm's Statement of Undisputed Facts, Progress Project maintained and inspected the roof on a regular basis with no identification of delaminated or peeling elastomeric coating, extended pooling or deflection, or other observable issues prior to the storm. And, it didn't experience roof leaks prior to the storm or make any repairs due to roof leaks prior to the storm. Following the storm, the roof had pervasive and persistent leaks with water entering the three stores at the property operated by the

tenants. The coating peeled off the bitumen layer and the roof held moisture with soft and soggy areas throughout.

State Farm inverts the burdens, suggesting that Project Progress must show the roof's condition directly prior to the storm when it is State Farm that seeks to rely on a wear and tear or exclusion, which differs from the explanation of its coverage decision set forth in State Farm's denial letters and is not even pleaded as an affirmative defense in this case. State Farm's coverage denials do not even address the roof damage.

With respect to interior damage, State Farm contends that Project Progress cannot point to any specific storm created hole or opening that allowed rain to enter the premises. It contends that its expert, David Weber, opines that rain entered through openings caused by deterioration, but Mr. Weber does not identify any specific holes or openings. The rain necessarily entered through openings and Progress Project had no leaks prior to the storm event. A jury can certainly disbelieve Mr. Weber's opinions, which are largely premised on sky view observations of the roof taken over many years with Mr. Weber stating that he believes from the unclear pictures that there were roof repairs performed (there were not) and that water was pooling on the roof prior to the storm event (although he admits that he doesn't know when photos were taken in proximity to rain and as such, doesn't know if pooling actually occurred).

## STANDARDS

Progress Project does not disagree with State Farm's recitation of the law. State Farm bears the burden of demonstrating that it is entitled to judgment when the law is applied to undisputed facts. *Olga Despotis Tr. v. Cincinnati Insurance Co.*, 867 F.3d 1054, 1059 (8th Cir. 2017). The Court is to view the facts in the light most favorable to Progress Project. *Id.*

The involved policy is an all-risk policy. It covers all perils not limited or excluded in the policy. *Pakmark Corp. v. Liberty Mutual Ins. Co.*, 943 S.W.2d 256, 259 (Mo. App. 1997). State Farm carries the burden to prove the application of any coverage exclusion. *Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1225 (8th Cir. 1995).

## ARGUMENT

**State Farm's Coverage Position**

State Farm issued multiple denial letters as Progress Project continued to come back to State Farm to disprove State Farm's changing basis for denial. None of them even address the damage to the roof, which was the primary basis for the insurance claim.

The first such letter appears as Exhibit B to State Farm's Answer. The second paragraph explains the basis for State Farm's decision, stating "it was determined that the damage to the interior of the building resulted from a large amount of water on the roof that was not able to be handled by the drain system due to clogging and backup." (Docket No. 5-2). The letter then quotes a limitation and a number of exclusions. Among them are exclusions for fungi, virus, or bacteria; wear and tear; settling, cracking, shrinking, or expansion; continuous or repeated seepage, discharge or leakage of water; faulty design, workmanship; faulty materials; and faulty maintenance. *Id.* While the letter quotes exclusion 2.l(1) for "wear and tear" along with numerous exclusion, it does not identify State Farm's reliance of the exclusion with respect to roof damage, which the letter does not address at all.

While other letters followed, identifying different reasons for denial and quoting different provisions, none addressed the roof damage. The last such letter issued December 2, 2022 and is also attached to State Farm's Answer. (Docket No. 5-1). It states the basis for denial is that "it was determined that the damage to the interior of the building resulted from a large

amount of rainwater on the roof that exceeded the design flow of the storm drain system, causing the water to overflow and pool on the roof resulting in water infiltration to the building through a non-storm created opening." *Id.* As with prior letters, this letter does not address the roof damage at all.

State Farm waived its right or should be estopped from asserting any right to rely on the wear and tear exclusion to avoid the damage claim to the roof. It is also required to assert exclusionary provisions as affirmative defenses to preserve them. State Farm apparently recognized the concept in setting form limitations or exclusions in its Affirmative Defenses at paragraphs 2, 3, and 4. It does not set forth an affirmative defense concerning wear and tear of the roof. Its fifth defense seeks to incorporate the above discussed letters by reference. As detailed above, the letters contain no factual statements concerning damage to the roof or finding of wear and tear to the roof. While State Farm should not be allowed to breath life into a waived exclusion by pleading an affirmative defense, affirmative defense five certainly does nothing to put Progress Project on notice of the position that State Farm now seeks to take in its summary judgment motion. State Farm has waived its right to rely on a wear and tear exclusion.

**The Roof Damage**

State Farm's memorandum states that the elastomeric coating is no longer adhering to the bituminate after the storm, "however, plaintiff cannot prove that it was adhering before the storm." State Farm Mem., p. 5. In support, State Farm cites to page 19, lines 7-25 of Brent Cowin's deposition, stating in its memorandum that "Plaintiff's owner had no information about the condition of the coating prior to the storm." *Id.* Based on that statement, State Farm reasons plaintiff cannot prove the coating needs to be replaced as a result of the July 2022 storm.

There are multiple problems with State Farm's position relating to the coating. First, State Farm's policy contains an exclusion for wear and tear. Putting aside the waiver issue discussed above, State Farm has the burden of demonstrating the identified loss resulted from wear and tear, meaning Progress Project does not carry the burden of disproving all exclusions in the policy. Second, State Farm grossly distorts the testimony from Mr. Cowin. As explained in response to paragraph 14 of the Statement of Undisputed Facts, the full context of the questions and answers must be reviewed from pages 18 through 20. Ex. B, Cowin Dep: 18:16 to 20:15. State Farm's counsel showed Mr. Cowin photographs of the peeling coating taken after the storm and asked him whether he could say that it looked different the day before the weather event or directly before the weather event. While State Farm seeks to use the responses that Mr. Cowin couldn't say or didn't know to suggest that Progress Project cannot prove the storm caused the coating to peel, Mr. Cowin answered honestly in that he wasn't on the roof the day prior to the storm to observe the coating. The testimony does not support State Farm's statement that Plaintiff "had no information about the condition of the coating prior to the storm." Third and importantly, Progress Project does have information about the condition of the coating prior to the storm even if that information is not an observation of the coating the day prior to the storm.

As set forth in Plaintiff's Additional Material Facts in its Response to Defendant's Statement of Facts, the coating was not applied until late fall of 2015. Par. 5. It came with a 12 year warranty, which would run long after the 2022 storm, and was expected to last longer than the warranty. Par. 8. Mr. Cowin has been on the roof on numerous occasions, typically yearly. Pars. 9 and 10. At no time prior to the storm did Progress Project observe or did any of its contractors report any issues or problems with the roof or its coating. Pars. 11 and 14. Moreover, Todd Morris went on the roof within the twelve month period prior to the storm and observed no

peeling or unbonded elastomeric coating or other roof issues. Par. 23. Progress Project did not suffer leaks from the roof prior to the storm, but received complaints from all of its tenants after the storm of water intruding their stores. Pars. 11, 14-15. State Farm's suggestion that there is no evidence concerning the roof's pre-storm condition is disingenuous. Progress Project had no issues or problems with the roof pre-storm and did not find any unbonded or delaminated or peeling coating prior to the storm.

State Farm takes the same approach to replacement of the roofing materials under the coating. It does not dispute that they are saturated with water or that they need to be replaced. Rather, it takes the position that Todd Morris was "unable to say whether or not the water he believed to be in the roofing system was present before the July 2022 storm." State Farm Mem. 6. Again, State Farm distorts the deposition testimony. State Farm's counsel did not ask Mr. Morris if the materials requiring replacement were saturated as a result of the storm. He asked after an exchange as to the purpose of roof vents (where Mr. Morris explained the vents are designed to release steam or water vapor if water gets into the roof system) whether there was water in the roofing system prior to the July 2022 storm. Ex. C, Morris Dep. 42: 5-24. That question differs greatly from one asked about the saturation observed post storm. As the roof system has been in place since shortly before Progress Project's purchase in 2004, it is unsurprising that Mr. Morris testified that he had "no idea" whether there was ever water in the system prior to the 2022 storm.

State Farm repeats the tactic to then take issue with Mr. Morris's opinion that the metal decking requires replacement because it had deflected and is no longer shedding water. This time the "gotcha" relates to the exact amount of deflection caused by the storm versus the amount of deflection present prior to the storm. Plaintiff's Mem. p. 6. As explained in response to

paragraphs 18 and 19 of State Farm's Statement of Undisputed Facts, Mr. Morris testified that he "believes" the water from the storm caused the roof to deflect, explaining there was a catastrophic storm event and after that, water infiltration through the roofing system with observable post-storm deflection. He was on the roof looking for hail damage within a year prior to the storm event and did not observe any noticeable roof issues. Additional Facts, paragraph 23.

State Farm's expert didn't  provide deflection measurements or determine what deflected prior to the storm event and what deflected after the storm event. Again, there were no issues with the roof prior to the storm. Since the storm, the water leaks into the building and no longer drains properly. Project Progress identified the damage following the storm, which had not been observed or identified prior to the storm. State Farm doesn't dispute the existence of this damage, but rather now contends it is wear and tear excluded under the policy. State Farm's expert may have an opinion that the damage is wear and tear, but it is certainly contrary to Progress Project's experience with the roof. It was not dilapidated or broken down and causing leaks prior to the storm event. It was deflected after the storm in which much water sat on the roof, impacting the coating, entering the bitumen, and saturating the materials.

**The Interior Damage**

Project Progress does not dispute that the policy contains a limiting provision that pays interior damage from rain, whether driven by wind or not, only if the building or structure first sustains damage by a Covered Cause of Loss to the roof, outside walls, or outside building glass through which the rain, snow, sleet, ice, sand or dust enters. Unlike State Farm's position on the roof damage (or lack thereof), State Farm did identify and attempt to explain its position with respect to this limitation.

This is not, however, a situation where rain came in through an open window or through an opening due to construction or repair without adequate tarping. The rain did not actually enter the interior of the building. The policy does not define "rain" as used in the provision and it is not clear whether rain remains rain for purposes of the policy once it falls, whether onto the ground, a roof, or other surface, or even after it enters the ground. The policy should be construed in favor of coverage with any limitations or exclusions narrowly construed.

Regardless, the water entered into the building through a covered cause of loss (all risks not limited or excluded). The provision says nothing about a hole or crack created by a particular peril. It simply states that the damage to the interior is covered if the "rain" enters through damage to the building or structure caused by a covered cause of loss. As detailed above, there are disputed facts concerning roof damage resulting from the storm. The roof did not leak into the interior prior to the storm and it did after the storm. Progress Project needs nothing more to create a disputed issue of fact.

On page 4 of its memorandum, State Farm contends that "neither plaintiff nor plaintiff's expert was able to state whether or not the roof had openings in it prior to the storm." State Farm stretches the deposition testimony again. Brent Cowin was asked only whether he was aware of "any holes" created in the roof as a result of the July 2022 storm and he testified that he wasn't aware or unaware and didn't know, but did know the roof was leaking all over the place when it wasn't leaking before. Ex. B, Cowin Dep. 33: 22 to 34: 11. Mr. Morris's testimony is not as portrayed either. He was asked if there were cracks or holes in the modified bitumen prior to the 2022 storm and he said that he did not know. When asked to explain how water entered due to the storm, he explained. Ex. C, Morris Dep. 39:13 to 41:12. He said if there are already openings, the water will find those openings and if there it is not already leaking, the weight of the water

stresses and contorts to the materials and compresses them to where they leak. *Id.* Here, there were no prior leaks experienced.

The property didn't destroy itself. And, this is not a situation where the materials simply cracked, shrunk, or expanded on their own. The loss is no different than a hail strike or wind opening up part of the roof, allowing rain to enter. Here, the rain was no longer rain, it was just water pooling on the roof during the storm event, and the weight necessarily caused openings allowing the water to enter where it had not previously.

## CONCLUSION

There are disputed issues of fact concerning the cause of the damage to the roof. The Court should give Project Progress all reasonable inferences and deny State Farm's motion for summary judgment.

Respectfully submitted,

THOMPSON COBURN LLP

By */s/ Matthew S. Darrough*
Matthew S. Darrough - 46307MO
One US Bank Plaza
St. Louis, MO 63101
P: 314 552 6000/ F: 314 552 7000
mdarrough@thompsoncoburn.com

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing instrument was sent via electronic mail to all attorneys of record this the 31st day of January 2025.

*/s/ Matthew S. Darrough*