**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| THE PROGRESS PROJECT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-CV-710 SRW |
| | ) | |
| STATE FARM FIRE AND CASUALTY COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment (ECF No. 57) and Motion to Exclude Certain Opinions of Plaintiff's Expert Todd Morris (ECF No. 60). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). The Court will deny the motions.

## I. BACKGROUND

This case arises out of Defendant's failure to provide insurance coverage for Plaintiff's claim of property damage to its commercial building, specifically water damage to its roof and interior spaces. On July 26, 2022, the St. Louis area, where Plaintiff's commercial building is located, experienced a storm where approximately 12 inches of rain fell in a short amount of time. Water penetrated the roof of Plaintiff's building and entered the tenants' spaces. Plaintiff filed an insurance claim with Defendant who denied the claim asserting Plaintiff's insurance policy did not cover the damage.

As a result of Defendant's denial of its claim, Plaintiff filed a petition in the Circuit Court of the City of St. Louis asserting a claim for breach of contract and a claim for bad faith or vexatious refusal to pay, both under Missouri law. Defendant removed the matter to this Court

pursuant to diversity jurisdiction and 28 U.S.C. § 1332(a)(1). Defendant now seeks exclusion of Plaintiff's expert and dismissal of Plaintiff's claims through summary judgment.

## II. MOTION TO EXCLUDE PLAINTIFF'S EXPERT

Defendant seeks to exclude the following four opinions from Plaintiff's expert, Todd Morris:

a. The accumulation of rainfall overwhelmed the area to the level of the gravel stop (7") before flowing over the edge.
b. Roofing assemblies are not designed to evenly support the exponential increase in weight that occurred, and due to the weight of accumulated water during this event, some permanent deck deflection occurred. This damage and permanent sagging will also contribute to ongoing and large-scale ponding.
c. Without the deflection, sagging and bending that occurred, the water would have run over the gravel stops and over the side of the building and not into any of the vents.
d. The roof coating was also damaged and is deteriorating due to the ponding and roof deflection that occurred.

Defendant asserts these opinions are not based on sufficient facts or data as required by Rule 702 because Morris testified in his deposition that he did not have sufficient facts or information to form these opinions. In response, Plaintiff states Morris will not testify on any opinions about water entering the building through roof vents. For the remainder of the opinions, Plaintiff argues Defendant's criticisms go to the weight of Morris' testimony rather than its admissibility.

### A. Standard

The introduction of expert testimony is governed by Federal Rule of Evidence 702, recently amended effective December 1, 2023. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"Rule 702's screening requirement has been boiled down to a three-part test. First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant. Second, the expert must be qualified to assist the finder of fact. Third, the testimony must be reliable or trustworthy in an evidentiary sense." *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 777 (8th Cir. 2021) (internal quotations omitted). The proponent of expert testimony must prove its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001); Fed. R. Evid. 702. The determination as to the admissibility of expert testimony is within a district court's sound discretion. *See Arkwright Mut. Ins. Co. v. Gwinner Oil, Inc.*, 125 F.3d 1176, 1182 (8th Cir. 1997).

Due to the liberalization of expert testimony admission standards signaled by *Daubert*[1] and its progeny, and the codification of this trend in Rule 702, the Eighth Circuit has held that expert testimony should be liberally admitted. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) ("Daubert and Rule 702 thus greatly liberalized what had been the strict ... standards for admission of expert scientific testimony."). As long as the expert testimony "rests upon good grounds, based on what is known, it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Id.* (internal quotation omitted). The exclusion of expert testimony is proper "only if it is

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

so fundamentally unsupported that it can offer no assistance to the jury." *Wood v. Minn. Mining & Mfg. Co.*, 112 F.3d 306, 309 (8th Cir. 1997) (internal quotation omitted).

**B. Analysis**

In his report, Morris concludes that Plaintiff's building incurred roof damages and water infiltration as a result of the July 2022 storm. He opined that the building had sufficient drainage to handle two inches of rain an hour, but the storm caused flash flooding and the sewer system to overcharge. The water could not evacuate the roof area fast enough creating a large, growing pond of water on the surface of the roof. The accumulation of the rain overwhelmed the area to the level of the gravel stop, at seven inches, before flowing over the edge. This caused areas of the roof that sloped to the center drains to be under upwards of nine inches of water.

The weight of nine inches of rain across the surface area of the roof weighed more than 400,000 pounds. The weight of this water caused permanent deck deflection and will continue to cause ongoing and large-scale ponding. Morris found moisture in the underlying roof assembly and in the insulation underneath the roof surface. Morris also found that the roof coating was damaged and deteriorating due to the ponding and roof deflection causing the coating to peel and delaminate.

In his deposition, Morris testified he did not know if prior to the July 2022 storm there were any depressions on the roof. He did not know if prior to the storm there had been any ponding of water on the roof or if there were any cracks or holes in the roofing surface that would have allowed water to penetrate the roof. He did not know if there was any water in the roofing system before the storm. He testified he could only estimate how much water accumulated on the roof during the storm. He could not say what the depth of the ponding was on the roof. He testified deformations and deflections in the roof caused the water to pond during

the storm. But he could not say when those deformations and deflections were created. However, according to his affidavit filed by Plaintiff in response to Defendant's motion for summary judgment, Morris did inspect the roof for hail damage on July 22, 2021. At that time, he did not see any peeling or unbonded elastomeric coating, or anything that stood out as unusual or problematic.

Defendant argues Morris' opinions are not based on sufficient facts or data because he does not know the condition of the roof before the storm. Therefore, according to Defendant, he cannot state that the storm caused any deflection in the roof, or any deterioration in the roof coating. In response, Plaintiff asserts Defendant's arguments go to the weight of Morris' testimony, not to its admissibility. Plaintiff also states Morris will not testify as to any opinions concerning water entering the building through certain roof vents.

The question of the reliability of Morris' opinion is a close one, but the Court finds Morris' testimony is not so fundamentally unsupported that it can offer no assistance to the jury. Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case," *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006), such that the testimony is "so fundamentally unsupported that it can offer no assistance to the jury." *Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (quoting *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 864 (8th Cir. 2004)). Disputes about the factual basis of an expert's testimony ordinarily implicate the credibility—not the admissibility—of the testimony. *Sappington v. Skyjack, Inc.*, 512 F.3d 440, 450 (8th Cir. 2008); *see also Minn. Supply Co.*, 472 F.3d at 544.

Defendant ultimately disagrees with the basis of Morris' testimony which Defendant can challenge through cross-examination and through the presentation of its own expert. *TAMKO*

*Bldg. Prods., Inc. v. Factual Mut. Ins. Co.*, 890 F. Supp. 2d 1129, 1144 (E.D. Mo. 2012) ("Impeachment of an expert witness through contradictory testimony by another qualified expert is permitted under the federal rules of evidence, and it actually supports admissibility of the original expert's opinion because it presents a proper question of credibility for the jury."). Although Morris testified he does not know the condition of the roof coating immediately before the storm, or whether any water pooled on the roof before the storm, he had inspected the roof before the storm and did not find any issues and has expertise on roofs, thus, he may still testify as to why he believes the storm caused the damage. Defendant can then cross-examine him as to why he may be incorrect.

*Daubert* "calls for the liberal admission of expert testimony" that "should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Academy Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 791 (8th Cir. 2024) (quoting *Johnson*, 754 F.3d at 562). For these reasons, the Court will deny Defendant's Motion to Exclude.

## III. SUMMARY JUDGMENT

### A. Undisputed Facts

Before reciting the undisputed facts in this matter, the Court must address Defendant's arguments as to a declaration Plaintiff submitted in support of its statement of additional material facts. Plaintiff submitted a declaration from Brent Cowin, who is the sole member of Plaintiff, a limited liability company. In this declaration, Cowin makes statements about the condition of the roof at issue before the July 2022 storm, along with statements about what happened when Cowin contacted Defendant to make a claim for insurance coverage of the roof. Defendant

argues the Court should not rely on the statements in the declaration because they are not based on personal knowledge and rely on hearsay statements.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court disregards portions of declarations or affidavits that were made without personal knowledge or consist of hearsay. *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 801 (8th Cir. 2004). The statements made by Cowin in his declaration are based on personal knowledge. He is the sole member of and manager of Plaintiff. As the sole member and manager, he has knowledge of what has occurred with the building. Additionally, his declaration states he has personally observed the roof at various times. Defendant does not give any reason for why it believes Cowin does not have personal knowledge of the statements in the declaration.

Defendant also asserts many of the statements in the declaration are based on hearsay. There is no indication in the declaration that this is correct. For example, Defendant objects to the statement that Plaintiff had no issues with the roof leaking into the stores operated by its tenants or otherwise but provides no evidence that Cowin learned this information from an out of court statement. Nor is there anything in the record to indicate that the statements in Cowin's declaration are based on hearsay. Cowin may know that the roof has not had any leaks from his personal observations of the building as manager. For the same reasons, the Court finds the remaining statements in the declaration do not rely on hearsay and are, therefore admissible. The Court will consider Cowin's declaration in determining what facts are uncontested.[2]

[2] Defendant also objects to the introduction of photos taken by Morris that were not produced during discovery. The Court has not relied on those photos for this order and so will not determine if they are admissible at this time.

With those issues decided, the Court considers the following undisputed material facts in the light most favorable to Plaintiffs.

Plaintiff insured a commercial building with Defendant located at 8960 Riverview Boulevard in St. Louis, Missouri. Plaintiff acquired the building in 2004. Prior to Plaintiff purchasing the building, the building was redeveloped with new infrastructure including new electric, plumbing, HVAC, and roofing. Brent Cowin, the sole member and manager of Plaintiff, personally observed the new roof at the time of purchase. The building had a modified bitumen roof which is constructed to fuse the sheets of bitumen together in such a way that water cannot penetrate into the building. In fall of 2015, Plaintiff hired a contractor to apply an elastomeric coating to the roof, which was applied in 2016. Plaintiff had the coating applied not to cover up or cure any issues but to extend the roof's lifespan. Plaintiff made no other material changes or repairs to the roof.

Cowin has been on the roof of the building numerous times. He uses contractors to look over the building and roof and he has personally conducted periodic inspections of the roof and HVAC equipment located on the roof, as well as joining others during their inspections. He believes he has been on the roof yearly, or nearly so, both before and after the application of the elastomeric coating.

The building was subject to a storm on July 26, 2022. During the storm, or immediately afterwards, water entered the interior of the building and into the businesses occupying the building. Before the storm, at no times during Plaintiff's ownership of the property did Plaintiff identify any material issues or problems with the roof. After the storm, each of Plaintiff's tenants in the building complained to Plaintiff of significant water entering their stores.

When Plaintiff filed its claim, Defendant assigned David Carvajal to adjust the claim. He conducted an inspection on August 10, 2022. Carvajal told Plaintiff he observed significant roof damage, found no clogs in the roof drains, and planned to prepare an estimate of value. However, on August 22, 2022, in a surprise to Plaintiff, Carvajal called Plaintiff to state Defendant was denying coverage due to clogs. Over several months of Plaintiff attempting to get Defendant to cover the loss, Defendant frequently changed its position from clogs to sewer backups, and others, never discussing damage to the roof but only focused on interior damage.

Without insurance proceeds, Plaintiff cannot afford to replace the roof. It hired contractors to try and fix or patch locations believed to be associated with leaks, but the leaks are pervasive and persistent. The elastomeric coating is delaminated and peeling, the roof is soggy and soft in many areas, and there are ongoing water intrusions. Before the storm, Plaintiff had not observed or experienced any of these issues.

Plaintiff's expert, Todd Morris, did not know if the roofing system had water in it before the storm. He believes the weight of the water that accumulated on the roof may have caused the roof to deflect during the storm. Morris observed depressions in the roofing material, but he did not know how long they had been present or when they were created. Morris testified in his deposition that the metal decking underneath the roof needs to be replaced because it had deflected and was no longer shedding water as it once did. He could not say how much deflection was caused by the storm and how much was present before the storm. However, on July 22, 2021, Morris did inspect the roof for hail damage. At that time, he did not see any peeling or unbonded elastomeric coating, or anything that stood out as unusual or problematic.

The insurance policy states:

> When a Limit Of Insurance is shown in the Declarations for that type of property as described under Coverage A – Buildings, Coverage B – Business Personal

> Property, or both, we will pay for accidental direct physical loss to that Covered Property at the premises described in the Declarations caused by any loss as described under SECTION I – COVERED CAUSES OF LOSS.

ECF No. 58-1, at 39. SECTION I – COVERED CAUSES OF LOSS states, "We insure for accidental direct physical loss to Covered Property unless the loss is: 1. Excluded in SECTION I – EXCLUSIONS; or 2. Limited in the Property Subject to Limitations provision." *Id*. at 40. The "Property Subject to Limitations" provision states,

> 1. We will not pay for loss to:
>
> e. The interior of any building or structure, or the property inside any building or structure, caused by rain, snow, sleet, ice, sand or dust, whether driven by wind or not, unless:
>
> (1) The building or structure first sustains damage by a Covered Cause of Loss to its roof, outside walls, or outside building glass through which the rain, snow, sleet, ice, sand or dust enters; or
>
> (2) The loss is caused by thawing of snow, sleet, or ice on the building or structure.

*Id*. at 40. In SECTION I – EXCLUSIONS, the policy excludes "Other Types of Loss" including: "(1) Wear and tear; (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself[.]" ("Wear and Tear" exclusion) *Id*. at 43.

### B. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the

Court considers the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). To avoid summary judgment, the non-movant must demonstrate the existence of specific facts supported by sufficient probative evidence that would permit a finding in his favor on more than speculation. *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017). Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017).

**C. Discussion**

In its motion, Defendant asks the Court to grant summary judgment in its favor asserting the insurance policy excludes coverage for interior damage caused by rain and excludes damage to the roof because Plaintiff cannot prove that damage to the roof was caused by the July 2022 storm. In response, Plaintiff argues Defendant waived any right to rely on the Wear and Tear exclusion because it never asserted this exclusion for damage to the roof in any of its denial letters and did not include it as an affirmative defense. As for Defendant's assertion that Plaintiff cannot prove the storm damaged the roof, Plaintiff argues, first, it is Defendant's burden to establish an exclusion applies, and second, Defendant has misstated the evidence regarding Plaintiff's knowledge of the condition of the roof before the storm. Finally, Plaintiff asserts the policy provides coverage for interior damage because the water entered the building through a covered cause of loss – a roof damaged by a storm.

Because this case is based on diversity jurisdiction, "state law controls the construction of [the] insurance policies[.]" *J.E. Jones Const. Co. v. Chubb & Sons, Inc.*, 486 F.3d 337, 340 (8th Cir. 2007). In Missouri, interpretation of an insurance policy is a question of law. *Standard Artificial Limb, Inc. v. Allianz Ins. Co.*, 895 S.W.2d. 205, 209 (Mo. Ct. App. 1995). When interpreting an insurance policy, a court must "give terms their plain and ordinary meaning unless it is clear from the policy that the parties intended an alternate meaning." *Gavan v. Bituminous Cas. Corp.*, 242 S.W.3d 718, 720 (Mo. 2008). If the policy language is unambiguous, it must be enforced as written. *Id*. However, if the language is ambiguous, courts should construe the policy in favor of the insured. *Dibben v. Shelter Ins. Co.*, 261 S.W.3d 553, 556 (Mo. Ct. App. 2008). The mere "fact that parties disagree over the policy's interpretation does not render a term ambiguous." *O'Rourke v. Esurance Ins. Co.*, 325 S.W.3d 395, 398 (Mo. Ct. App. 2010). Rather, "ambiguity exists where there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different interpretations." *Seeck v. Geico General Ins. Co.*, 212 S.W.3d 129, 132 (Mo. 2007) (internal quotation marks and citation omitted). "The rules of construction are inapplicable when an insurance policy is ambiguous. The policy must be enforced as written." *Cincinnati Ins. Co. v. German St. Vincent Orphan Ass'n, Inc.*, 54 S.W.3d 661 (Mo. Ct. App. 2001).

"In construing insurance policies, Missouri courts apply the meaning which would be attached by an ordinary person of average understanding if purchasing insurance and resolves ambiguities in favor of the insured." *Williams v. Employers Mutual Cas. Co.*, 845 F.3d 891, 902 (8th Cir. 2017) (internal quotation marks and citations omitted). "Missouri also *strictly* construes exclusionary clauses against the drafter, who also bears the burden of showing the exclusion applies. *See Burns v. Smith*, 303 S.W.3d 505, 510 (Mo. 2010) (emphasis in original).

**i. Plaintiff's Procedural Arguments to the Wear and Tear Exclusion**

Plaintiff asserts Defendant waived or should be estopped from applying the exclusion to the roof damage because it did not plead the wear and tear exclusion as an affirmative defense and did not reference the roof damage in any denial letters.

**1. Affirmative Defense**

Federal Rule of Civil Procedure 8(c) requires affirmative defenses to be raised in a responsive pleading. Whether an exclusion in an insurance policy is an affirmative defense is a question of state law. *First Union Nat'l Bank v. Pictet Overseas Trust Corp., LTD*, 477 F.3d 616, 621-22 (8th Cir. 2007). In Missouri, insurers must plead exclusions to liability as an affirmative defense. *Murray-Kaplan v. NEC Ins., Inc.*, 617 S.W.3d 485, 494 (Mo. Ct. App. 2021); *Century Fire Sprinklers, Inc. v. CNA/Transp. Ins. Co.*, 23 S.W.3d 874, 877 (Mo. Ct. App. 2000). In Paragraph 3 of Defendant's Affirmative Defenses, Defendant pleaded:

> By way of further answer and defense, Defendant states that any damage to the roof and other external parts of Plaintiff's building was caused by water that backed up and overflowed from the sewer, *wear and tear*, decay, deterioration, settling, cracking, sinking or expansion, faulty, inadequate or defective work, workmanship, repair, and/or maintenance concerns with the building. These causes of loss are excluded in Defendant's policy of insurance and there is no coverage for this loss.

ECF No. 5, at 8 (emphasis added). Defendant has adequately pleaded the Wear and Tear exclusion as an affirmative defense.

**2. Waiver or Estoppel**

Plaintiff argues that Defendant has waived its right to rely on the Wear and Tear exclusion for the damage to the roof because none of its denial letters addressed the roof damage. Plaintiff does not provide any legal support for this argument and did not attach all of the denial letters, instead citing to two that were filed with Defendant's answer and referring vaguely to

others. Plaintiff has failed to establish Defendant waived its right to rely on the exclusion or that Defendant should be estopped from relying on the exclusion.

"If an insurer denies liability for a claim against an insured, specifying the grounds for that denial, the insurer may be waived or may be estopped from subsequently raising other grounds for denying liability under the policy." *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 53 (Mo. Ct. App. 1998) (citing *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384 (Mo. 1989)). "In the absence of either (1) an express waiver by the insurer or (2) conduct which clearly and unequivocally shows a purpose by the insurer to relinquish a contractual right, the insured must show prejudice before the rule may be invoked." *Id*. (quoting *Brown*, 776 S.W.2d at 388).

The two letters that are in the record before the Court do not refer to the damage to the roof; the letters only refer to the damage to the interior of the building. ECF Nos. 5-1, 5-2. However, both letters do list the Wear and Tear exclusion as a reason for denying coverage. *Id*. Neither of these letters can be considered an express waiver by Defendant or conduct that clearly and unequivocally shows a purpose by Defendant to relinquish a contractual right. *Brown*, 776 S.W.2d at 388. In fact, the second letter explicitly states, "This Company does not intend, by this letter, to waive any policy defenses in addition to those stated above and reserves its right to assert such additional policy defenses at any time." ECF No. 5-2, at 3.

Without an express waiver, Plaintiff must show it was prejudiced by Defendant's failure to assert the exclusion and it has not done so. In its response, Plaintiff says it was not put on notice of the position Defendant asserts but does not state how this prejudiced Plaintiff. Because Plaintiff has not established Defendant waived its right to rely on the exclusion, or should be

estopped from relying on the exclusion, the Court will not apply waiver or estoppel to application of the Wear and Tear exclusion.

### ii. Coverage under the Policy

#### 1. Coverage of Damage to the Roof

Under the policy, accidental direct physical loss to the property is covered unless the loss is excluded in "Section I – Exclusions" or limited in the "Property Subject to Limitations" provision. Defendant relies on the "Wear and Tear" exclusion listed in "Section I – Exclusions," which states that loss due to "(1) Wear and tear; (2) Rust or other corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself[.]" ECF 58-1, at 43. Thus, damage to the roof is not covered by the policy if the damage was caused by wear and tear or some type of deterioration to the roof. Defendant asserts that Plaintiff cannot establish the damage to the roof was caused by the July 2022 storm because Plaintiff has no information about the condition of the roof before the storm. Essentially, Defendant argues Plaintiff cannot prove the damage was not caused by wear and tear. Therefore, according to Defendant, Plaintiff has not established coverage under the policy.

"While the insured bears the burden of proving coverage under an insurance policy, the insurer bears the burden of showing that a policy exclusion precludes coverage for a particular loss." *Shelter Mut. Ins. Co. v. Hill*, 688 S.W.3d 638, 647 (Mo. Ct. App. 2024) (quoting *Messina v. Shelter Ins. Co.*, 585 S.W.3d 839, 843 (Mo. Ct. App. 2019)). "An insurance company, relying on an exclusion in a policy, has the burden of proving facts which make the exclusion applicable." *Id.* (quoting *Columbia Mut. Ins. Co. v. Neal*, 992 S.W.2d 204, 209 (Mo. Ct. App. 1999)). Thus, it is Defendant's burden to establish the damage was caused by wear and tear or deterioration and excluded from coverage. Defendant has not done so. In its statement of

material facts, Defendant does not provide any facts that damage to the roof was caused by wear and tear or deterioration. The only fact that even touches on the issue is paragraph ten which states, "The rain entered the roof due to the delipidated condition of the roof." ECF No. 58, at 3. However, that fact is addressing how water entered the building, not how the roof itself was damaged. In contrast, Plaintiff asserted facts that the storm caused the damage to the roof including facts about the condition of the roof before the storm, that no leaks had been observed before the storm, and its expert's testimony that the storm caused damage to the roof. Thus, there is a material dispute of fact as to what caused the damage to the roof. In its motion and related filings, Defendant has not established that the policy exclusion applies. For this reason, the Court cannot grant summary judgment in Defendant's favor as to coverage of the damage to the roof.

**2. Coverage of Damage to the Interior**

Under the policy, the "Property Subject to Limitations" provision states that damage to the interior of a building is not covered if caused by rain unless the building first sustains damage by a "Covered Cause of Loss" to its roof, outside walls, or outside building glass through which the rain enters. ECF No. 58-1, at 40. A "Covered Cause of Loss" is an accidental direct physical loss that is not excluded in "Section I – Exclusions" or limited by the "Property Subject to Limitations" provision. Defendant argues that the rain entered the interior of the building through the roof which was damaged not by a "Covered Cause of Loss" but by wear and tear, which is excluded under the policy.

As the Court stated previously, there is a genuine dispute of material fact as to whether the roof was damaged by the storm or by wear and tear. The parties have dueling experts who disagree on the cause of the damage. If the jury finds that the damage to the roof was caused by the storm, then the damage to the interior of the building is covered under the policy. However, if

the jury agrees with Defendant that the damage was caused by wear and tear to the roof, then the damage to the interior of the building is not covered. Because there is a dispute of material fact, the Court cannot grant summary judgment in Defendant's favor.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 57) is **DENIED**.

**IT IS FURTHER ORDERED** that Motion to Exclude Certain Opinions of Plaintiff's Expert Todd Morris (ECF No. 60) is **DENIED**.

So Ordered this 7th day of March, 2025.

**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**